IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW JACKSON | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-0126 |
| QUOVELLO JOHNSON | : | |

**SURRICK, J.**                                                                                          **JULY   27  , 2012**

## MEMORANDUM

Presently before the Court is Defendant QuoVello Johnson's Motion to Dismiss.  (Def.'s Mot., ECF No. 3.)  For the following reasons, Defendant's Motion will be granted.

**I.	BACKGROUND**

Plaintiff Matthew Jackson is currently incarcerated at the State Correctional Institution at Graterford, Pennsylvania ("Graterford").  Graterford is a prison operated by the Pennsylvania Department of Corrections ("DOC").  Defendant QuoVello Johnson is a Corrections Food Services Instructor ("CFSI") at Graterford.  Plaintiff, acting pro se, filed the instant Complaint in the Court of Common Pleas of Montgomery County, Pennsylvania.  (Compl., ECF No. 1 Ex. A.)  Defendant removed the matter to this Court.  (Notice of Removal, ECF No. 1.)  Plaintiff's Complaint alleges that Defendant violated his right to due process and his right to the protections of the Eighth Amendment to the United States Constitution.  (Compl. ¶ 16.)  He seeks relief in the form of "a money judgment of $50,000 delivered via cashiers check against the defendant Ms. Q. Johnson, together with any and all other extra-ordinary relieve this honorable court/judge deems

appropriate under the circumstances."[1]

A liberal reading of Plaintiff's pro se Amended Complaint reveals that this case arises out of an incident that occurred on August 7, 2009, in the kitchen at Graterford, where both Plaintiff and Defendant worked. According to the initial misconduct report filed with the prison, Plaintiff "threatened [Defendant] or [her] family with bodily harm," used "abusive, obscene, or inappropriate language," and "refus[ed] to obey an order" to pick up paper that was strewn on the ground. (Misconduct Report 1-2, ECF No. 2.) Defendant denied these allegations, and claimed that a witness—fellow inmate "F. Flowers"—and surveillance tape footage would corroborate his version of events. (*Id*. at 7.) At a hearing regarding the alleged misconduct, Plaintiff's witness was not permitted to testify. (*Id*.) The hearing examiner viewed the surveillance video, and found Plaintiff guilty of several violations of Graterford's internal disciplinary code. (*Id*. at 9.) The hearing examiner removed Plaintiff from his job in the kitchen and directed that he serve a sixty-day term in the Restricted Housing Unit ("RHU"). (Misconduct Report 9.)[2] The hearing examiner's decision was upheld by a review committee. (*Id*. at 6.) Plaintiff appealed the hearing examiner's ruling to Graterford's administration. (*Id.* at 7.) The appeal was ultimately denied. (Pl.'s Resp. Ex. E at 14, ECF No. 4.)

Plaintiff claims that on August 20, 2009, he was sent to the RHU, and that some of his property was missing after the move. (Pl.'s Resp. Ex. D at 11, ECF No. 4.) Plaintiff alleges that

---

[1] Pro se pleadings are subject to a liberal review. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Supreme Court has held that a pro se complaint, "however inartfully pleaded," is to be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[2] Plaintiff was released from the RHU after serving less than the full sixty-day term. (Compl. ¶ 7.)

he is missing a portable fan purchased from the prison commissary and a dictionary volume purchased outside the prison. (*Id*.)  Plaintiff further notes that he is "a diabetic and insulin dependent." (Compl. ¶ 15.)  He claims that his placement in the RHU "aggravated his . . . condition, causing lose (sic) of weight and the like[]." (*Id*. at ¶ 18.)

Plaintiff claims that Defendant "knowingly [and] callously submitted a false disciplinary action against him." (*Id*. at ¶ 14.)  He argues that Defendant lied, subjected Plaintiff to "official oppression," and "denied/impeded plaintiff in the exercise and enjoyment of constitutional rights to be free from cruel and unusual punishment." (*Id*. at ¶ 16.)  He claims that Defendant acted, or purported to act, "in an official capacity." (*Id*.)  Plaintiff also alleges that Defendant "knew or should have known" that her allegations would have a direct effect on Plaintiff's diabetic condition. (*Id*. at ¶ 15.)

Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging failure to state a claim upon which relief can be granted. (Def.'s Mot.)  Plaintiff has filed a Response which included an "amended complaint." (Pl.'s Resp., ECF No. 4.)[3]  Defendant has replied to Plaintiff's Response. (Def.'s Reply, ECF No. 5.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

---

[3] Plaintiff's amended complaint is exactly the same as the original Complaint, except that it includes handwritten designations of "Count I" and "Count II."

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In *Iqbal*, the Supreme Court set forth a two-part analysis that district courts must conduct when reviewing a complaint challenged under Rule 12(b)(6).  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (describing *Iqbal*'s two-step inquiry).  The district court must first separate "the factual and legal elements of a claim," accepting all of the complaint's well-pleaded facts as true but rejecting legal conclusions.  *Id.* at 210 (citing *Iqbal*, 129 S. Ct. at 1949); *see also Iqbal*, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim].").  Under this analysis, well-pleaded factual allegations are to be given a presumption of veracity.  *Iqbal*, 129 S. Ct. at 1950.  The district court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 129 S. Ct. at 1950).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *Id.*  By contrast, a complaint that demonstrates entitlement to relief through well-pleaded facts will survive a motion to dismiss.  *See id.*  Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *See McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950).

### III.   ANALYSIS

####    A.   Sovereign Immunity

Plaintiff's pleadings seek relief from a single Defendant in her official capacity[4] as an employee of the Commonwealth of Pennsylvania. (Compl. ¶ 16(f).)[5] The doctrine of sovereign immunity bars all claims for monetary damages against state officials. The Eleventh Amendment "has been interpreted to bar suits for monetary damages by private parties in federal court against a state or against state agencies." *Melo v. Hafer*, 912 F.2d 628, 635-36 (3d Cir. 1990). A suit against a state official in her official capacity is "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

A state can choose to waive its sovereign immunity. However, the Commonwealth has explicitly not waived sovereign immunity in federal court. The relevant Pennsylvania statute states that "nothing [] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa. Cons. Stat. § 8521(b).

Plaintiff appears to seek relief pursuant to 42 U.S.C. § 1983,[6] which provides remedies for

---

[4] Considering Plaintiff's pro se status, we will assume that Plaintiff sought to sue Defendant both in her official capacity *and* her individual capacity.

[5] The DOC is designated by state law as part of the Commonwealth's executive department. 71 Pa. Stat. § 61 (2010). The Third Circuit has recognized that the DOC is entitled to the benefits of the Commonwealth's sovereign immunity. *Lavia v. Dept. of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). DOC employees have been found to enjoy the protections of the Commonwealth's sovereign immunity. *See, e.g.*, *Johnson v. Wenerowicz*, No. 10-5027, 2011 U.S. Dist. LEXIS 40408, at *15 (E.D. Pa. Apr. 8, 2011).

[6] Plaintiff does not cite § 1983 in his pleadings. In fact, in his Response to Defendant's Motion to Dismiss, he states explicitly that he is not raising a claim under Section 1983. He also claims that his Complaint alleges only "state torts" and that this action was wrongfully removed to federal court. (Pl.'s Resp. ¶¶ 2-5.) He does, however, allege claims that appear to be related to the Eighth Amendment and to the denial of due process. (*Id*. at ¶ 7.) Section 1983 is the most logical vehicle which Plaintiff could use to advance such claims.

a deprivation of an individual's constitutional rights by "persons" acting under the color of law. 42 U.S.C. § 1983.[7] The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. Consequently, an official acting in her official capacity, such as Defendant, cannot be sued under 42 U.S.C. § 1983. Under the circumstances, we need not reach the merits of Plaintiff's claim against Defendant in her official capacity since Plaintiff's claim fails as a matter of law.

### B. Merits of Plaintiff's Claim Against Defendant in Her Individual Capacity

Alternatively, if Plaintiff is suing Defendant in her individual capacity, pursuant to 42 U.S.C. § 1983, such a claim would not be barred by Pennsylvania's Eleventh Amendment immunity. The Third Circuit has recognized that such a suit would be permitted under Section 1983. *Melo*, 912 F.2d at 635. Such a claim can be pursued against a defendant in her individual capacity if the defendant had personal involvement in committing an alleged violation. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). We will assume that Plaintiff seeks to pursue a civil rights claim against Johnson, in her individual capacity, for violating both his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process under the law.

The Eighth Amendment forbids prisons from imposing any punishment which violates civilized standards of humanity and decency. *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir.

---

[7] Regardless of how we construe Plaintiff's general civil rights claims, we have jurisdiction. *See* 28 U.S.C. § 1443 ("Any of the following civil actions . . . commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending . . . . For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.").

1992). In order to establish an Eighth Amendment claim, a prisoner must establish that he has been deprived of "the minimal civilized measure of life's necessities." *Id*. This requires an inmate to prove (1) that the deprivation alleged was sufficiently serious, and (2) that a prison official acted with deliberate indifference in subjecting him to that deprivation. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

We first note that much of the alleged cruel and unusual punishment is not connected to Defendant's activities. There is no allegation that Defendant was involved in the misplacement of Plaintiff's personal property. There is no basis for an allegation that Defendant was involved in having Plaintiff moved to the RHU. Furthermore, Plaintiff's claim does not allege a serious deprivation within the meaning of the Eighth Amendment. Segregated confinement, as a matter of law, does not in and of itself constitute cruel and unusual punishment. *Id*. We also find no legal basis for assuming that the deprivation of Plaintiff's personal property could fall within the ambit of the Eighth Amendment.[8] Finally, a false misconduct report does not constitute a violation of the Eighth Amendment. *Booth v. Pence*, 354 F. Supp. 2d 553 (E.D. Pa. 2005).

The Fourteenth Amendment to the United States Constitution forbids any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const.

---

[8] Plaintiff could, theoretically, claim that he was deprived of medical treatment as a result of his diabetes. The Supreme Court has ruled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'" and is "proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although Plaintiff has mentioned that his diabetes was adversely affected by the events at issue here, he has not alleged with any specificity that he had serious medical needs which were left unaddressed, nor that prison officials—specifically, Defendant—were deliberately indifferent to such needs. While we read Plaintiff's pleadings liberally, we cannot, without facts, impute to Defendant, a kitchen employee and not a medical professional, knowledge of Plaintiff's condition or any degree of responsibility for his care.

Amend. XIV, § 1. To establish a claim under the Due Process Clause, a plaintiff must establish that he has a protected liberty or property interest of which he has been deprived, and that the process afforded to deprive him of that interest did not comport with the minimum constitutional requirements. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

Considering first whether Plaintiff could have been deprived of a liberty interest, the Supreme Court has held that a prisoner has been deprived of a liberty interest only when the prison "imposes atpyical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Third Circuit has held that "atypical and significant hardship" is defined relative to "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin*, 112 F.3d at 706. The Supreme Court has held that "discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.[9]

The decision to transfer Plaintiff to the RHU did not implicate a liberty interest. The Third Circuit has previously ruled that restrictive housing for a fifteen-month period did not implicate a liberty interest. *Griffin*, 112 F.3d at 706-07. Plaintiff was held for less than sixty days in administrative confinement. Plaintiff has offered no facts which speak to any "atypical" hardship he may have experienced. Although he alleges that his diabetes has worsened as a result of his confinement, he offers no factual basis for this claim, nor does he point to any support for the claim that such deterioration in his medical condition might have been a result of his RHU

---

[9] "The mere fact that Pennsylvania has created a careful procedural structure to regulate the use of administrative segregation does not indicate the existence of a protected liberty interest." *Griffin*, 112 F.3d at 709 n.3.

placement.

Considering next whether Plaintiff was deprived of a property interest, Plaintiff alleges that tangible personal property was taken from his cell while he was in the process of moving to the RHU. Although this could implicate a property interest, there exists no evidence of any link between Defendant and the maintenance of Plaintiff's personal possessions. Plaintiff is not entitled to relief from Defendant on this claim, since there is no connection between Defendant and Plaintiff's missing dictionary and fan.

Accordingly, we will dismiss Plaintiff's claims against Defendant in her individual capacity based upon the failure to state a claim upon which relief can be granted.

### C.  Plaintiff's State Law Claim

We note that Plaintiff seeks to raise a state law claim in addition to the federal claim discussed above. We have authority to review state law claims attached to federal claims under 28 U.S.C. § 1441(c). Plaintiff argues this claim is not barred by sovereign immunity, pursuant to 42 Pa. Cons. Stat. § 8522(b)(2), and requests that we remand to state court. We deny Plaintiff's request because Section 8522(b)(2) is plainly not applicable. The section constitutes a waiver of sovereign liability by the Commonwealth of Pennsylvania for "[a]cts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." 42 Pa. Cons. Stat. § 8522(b)(2). Defendant is not a health care employee. She is a food services instructor at a correctional institution.

Considering the possibility that this matter might be actionable pursuant to Section 8522(b)(3), which carves a narrow exception to the doctrine and permits claims related to "care, custody, or control of personal property," this subsection might apply to Plaintiff's argument that

his personal possessions were misplaced, lost or otherwise tampered with on or around August 20, 2009. Even if such an exception permitted Plaintiff to file suit, Plaintiff cannot plausibly claim that Defendant was involved. Defendant, as a CFSI, is not tasked with inventorying and moving Plaintiff's possessions, and Plaintiff has not claimed that Defendant is at all connected to this specific incident. As such, even if Defendant were found to have waived sovereign immunity for this limited claim, Plaintiff has not articulated a set of facts which could possibly entitle him to relief under this exception. Moreover, no other exception in Section 8522 could apply.

We are aware of no state law which provides a basis for relief against Defendant, even if we accept all of Plaintiff's averments as true. Plaintiff's claim lacks legal merit, and as such, must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendant QuoVello Johnson's Motion to Dismiss is granted.[10]

An appropriate Order will follow.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**

---

[10] Plaintiff requests the Court appoint counsel on his behalf. (Compl. ¶ 7.) While there is no absolute right to counsel in civil cases, a district court has discretion in deciding whether the appointment of counsel for a pro se civil litigant is worthwhile. *See* 28 U.S.C. § 1915(e)(1); *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997). The Third Circuit has suggested several factors for courts to consider in deciding whether to appoint counsel. The first criterion mentioned by the Third Circuit is that the Plaintiff's claims must "have some merit in fact and law," *Parham*, 126 F.3d at 457. We have determined that Plaintiff's claims lack such merit. Accordingly, we decline to appoint counsel.